UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

N° 07-CV-1927 (JFB)

———————————

DONNY RAY BATTS,

Petitioner,

VERSUS

JAMES CONWAY, SUPERINTENDENT ATTICA CORRECTIONAL FACILITY,

Respondent.

———————————

MEMORANDUM AND ORDER
April 22, 2008

———————————

JOSEPH F. BIANCO, District Judge:

Donny Ray Batts (hereinafter, "Batts" or "petitioner") petitions this Court for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, to vacate his conviction for one count of Murder in the First Degree. Batts challenges his conviction on the following grounds: (1) his guilty plea was coerced and involuntary; (2) the indictment was defective because his request to testify before the Grand Jury was not honored; and (3) he received ineffective assistance of counsel. On August 1, 2007, James Conway ("respondent") moved to dismiss the petition. For the reasons set forth below, respondent's motion is granted and the petition is dismissed.

I. BACKGROUND

Petitioner was indicted by a Grand Jury in Suffolk County on January 3, 1996, on two counts of Murder in the First Degree [N.Y. State Penal Law § 125.27(1)], three counts of Murder in the Second Degree [N.Y. State Penal Law § 125.25(2)], one count of Robbery in the First Degree [N.Y. Penal Law § 160.15(1)], and one count of Attempted Rape in the First Degree [N.Y. State Penal Law §§ 110.00 & 130.35(1)].

On May 2, 1996, petitioner entered a guilty plea in the Supreme Court of the State of New York, Suffolk County, to Murder in the First Degree in full satisfaction of the seven charges for which he had been indicted. In particular, the petitioner admitted during his plea allocution that, on December 29, 1995, he

invited the victim into a residence in Suffolk County and then punched her, used an iron cord to strangle her, and slashed her throat with a knife, causing her death. The petitioner also admitted that he intended to forcibly steal property and rob the victim, and caused her death during, and in furtherance of, the robbery. The prosecution based its consent to the plea to only one count of the entire indictment, which included a potential death-eligible charge, on the condition that petitioner be sentenced to a term of imprisonment of life without parole. The petitioner was specifically advised of this sentencing recommendation at the time of his plea.

On June 4, 1996, petitioner was sentenced to life without the possibility of parole. Petitioner filed his appeal as a motion pursuant to 22 N.Y.C.R.R. § 670.12(c). On October 4, 1999, the Appellate Division, Second Department, affirmed his conviction. *People v. Batts*, 265 A.D.2d 947 (N.Y. App. Div. 1999). On October 26, 1999, the New York State Court of Appeals denied petitioner's application for leave to appeal. *People v. Batts*, 265 A.D.2d 947 (N.Y. App. Div. 1999), *leave to appeal denied* 94 N.Y.2d 798 (N.Y. 1999).

Petitioner did not seek direct review of his conviction by the United States Supreme Court, nor did petitioner take any subsequent action with respect to his conviction until late 2003. Specifically, petitioner first filed a motion to vacate his judgment of conviction (New York Criminal Law § 440.10) on November 13, 2003. On March 5, 2004, the Supreme Court, Suffolk County, denied the motion. On June 9, 2004, the Appellate Division, Second Department denied petitioner's application for leave to appeal from the Supreme Court's March 5th decision. Petitioner filed a second motion to vacate his conviction on September 1, 2005. On December 19, 2005, the Supreme Court, Suffolk County, denied the motion. On March 14, 2006 the Appellate Division, Second Department, denied petitioner's application for leave to appeal from the December 19th decision of the Supreme Court. On April 21, 2006, petitioner's subsequent application to the New York Court of Appeals was dismissed because the matter was not appealable to that court. On July 12, 2006, petitioner's application for reconsideration was denied.

On, May 8, 2007, *pro se* petitioner filed the instant petition before this Court for a writ of *habeas corpus*, dated April 20, 2007.[1]

II. DISCUSSION

A. Timeliness of Petition for Writ of *Habeas Corpus*.

Respondents seek to dismiss the instant *habeas corpus* petition because petitioner failed to file it within the applicable statute of limitations provided by 28 U.S.C. § 2244(d)(1). For the reasons set forth below, this Court holds that Batts's petition is untimely under Section 2244(d)(1) and that there is no basis for equitable tolling.

---

[1] Though the petition was filed in the Clerk's office on May 8, 2007, the Court deems the petition filed on April 20, 2007, the date on which it was signed. *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (holding that the notice of appeal of a *pro se* incarcerated litigant is deemed filed when delivered to prison officials for mailing); *see also Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001) (concluding "that the district court properly extended the prison mailbox rule to petitions for writs of *habeas corpus*.").

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on state prisoners seeking *habeas corpus* review in federal court. 28 U.S.C. § 2244(d)(1). The statute begins to run from the latest of: "(A) the date on which the [petitioner's] judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or the laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A-D). Pursuant to the AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2). The Second Circuit has held that a state court application or motion for collateral relief is "pending from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999); *see also Carey v. Saffold*, 536 U.S. 214, 217, 220-21 (2002); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Gant v. Goord*, 430 F. Supp. 2d 135, 137 (W.D.N.Y. 2006).

In the instant case, because subsections (A) through (C) of Section 2244(d)(1) are inapplicable, the statute of limitations began to run on the date petitioner's conviction became final, pursuant to Section 2244(d)(1)(D). On October 26, 1999, the New York State Court of Appeals denied petitioner's application for leave to appeal. Pursuant to Supreme Court Rule 13(1), the time for petitioner to seek review in the United States Supreme Court expired ninety days later. *See Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) ("[A] petitioner's 'conviction becomes final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expires.'") (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). Accordingly, petitioner's conviction became final and the one-year limitations period began to run on January 24, 2000 and it expired one year later on January 24, 2001.

Here, the *habeas* petition was filed on April 20, 2007, which is well beyond the one-year limitation period. The Court recognizes that, pursuant to 28 U.S.C. § 2244(d)(2), the time during which a petitioner filed writs of *coram nobis* or other post-conviction applications to the state court is not counted for statute of limitations purposes and, thus, tolls the clock. However, in the instant case, petitioner filed his first motion to vacate his judgment of conviction (pursuant to New York Criminal Law § 440.10) on November 13, 2003, which is well over two years after the one-year statute of limitations had already run. In other words, petitioner did not pursue any post-conviction state relief for almost three years after his conviction became final, nor did he file his *habeas* petition during that period. Therefore, because both his November 13, 2003 application and his September 1, 2005 application for collateral, post-conviction relief in state court were filed

3

after the one-year statute of limitations period had already expired, the tolling periods during the pendency of those motions do not save his *habeas* petition from being untimely. *See, e.g., Doyle v. Yelich*, No. 05-CV-2750 (JG), 2005 WL 2475727, at *1 (E.D.N.Y. Oct. 7, 2005) ("Properly filed applications for post-conviction relief toll the limitations period, but they do not reset the portion of the limitations period that has already run.").

Although the instant petition is untimely, in "rare and exceptional" circumstances, the one-year statute of limitations is subject to equitable tolling. *See McGinnis*, 208 F.3d at 17; *see also Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). In order to obtain the benefit of equitable tolling, a petitioner must make two showings: (1) he must demonstrate that "extraordinary circumstances prevented him from filing his petition on time"; and (2) he must have "acted with reasonable diligence throughout the period he seeks to toll." *Smith*, 208 F.3d at 17. The petitioner bears the burden to affirmatively show that he is entitled to equitable tolling. *See Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 37 (2d Cir. 2002).

In the instant case, petitioner has put forth no explanation for his failure to file a *habeas corpus* motion within one year. He simply references the fact that he filed motions to vacate his conviction. As noted *supra,* the statute of limitations had already expired when these motions were filed and petitioner has failed to provide any explanation as to why he did not file these motions to vacate for almost three years after his conviction became final, or why he did not file a *habeas* petition during that period. Thus, the filing of the motions to vacate do not provide a basis for equitable tolling.

Moreover, even assuming *arguendo* that petitioner did not file a *habeas corpus* petition because petitioner erroneously thought his filing to vacate his conviction would reset the *habeas* clock, that excuse would fail to satisfy his burden of demonstrating "rare and exceptional" circumstances that would justify equitable tolling. *See, e.g.*, *Smith*, 208 F.3d at 17 (holding that petitioner's *pro se* status does not warrant equitable tolling); *Forbes v. Walsh*, No. 04-CV-5076 (LAK), 2007 WL 54792, at *4 (S.D.N.Y. Jan. 9, 2007) ("[T]hat [petitioner] was ignorant of the law and had to rely on other inmates for help – are not 'extraordinary,' as they apply to most inmates."); *Lu v. Phillips*, No. 03-CV-2558 (RJD), 2005 WL 1889461, at *2 (E.D.N.Y. Aug. 4, 2005) ("[L]ack of proficiency in English . . . and lack of expertise do not constitute 'extraordinary circumstances' justifying equitable tolling."); *Doyle*, 2005 WL 2475727, at *2 (holding petitioner's *pro se* status and ignorance of the law do not warrant equitable tolling); *Williams v. Breslin*, No. 03-CV-1848 (RWS), 2004 WL 2368011, at *6 (S.D.N.Y. Oct. 20, 2004) (holding that a lack of legal knowledge cannot excuse a delay in filing a petition); *Ayala v. Miller*, No. 03-CV-3289 (JG), 2004 WL 2126966, at *2 (E.D.N.Y. Sept. 24, 2004) ("Neither a prisoner's *pro se* status, nor his lack of legal expertise, provides a basis for equitable tolling of AEDPA's statute of limitations."); *Martinez v. Kuhlmann*, No. 99-CV-1094 (MBM), 2000 WL 622626, at *3 (S.D.N.Y. May 15, 2000) (holding difficulty with English and inability to find other prisoners to assist with claim not "extraordinary"). Moreover, even if petitioner had demonstrated extraordinary circumstances, petitioner has failed to establish that he acted with reasonable diligence during the entire period he seeks to toll.

In short, petitioner has not presented any grounds that warrant equitable tolling, nor has he made a showing of actual innocence. *See Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003) (holding that it was in error to dismiss a petition claiming actual innocence, on statute of limitations grounds, without further analysis). Accordingly, the petition is dismissed as time-barred. However, in an abundance of caution, the Court turns to the merits of the instant petition. For the reasons that follow, even assuming *arguendo* that the *habeas* petition was timely, the instant petition also fails on the merits.

B. The Standard of Review

To determine whether a petitioner is entitled to a writ of *habeas*, a federal court must apply the standard of review provided in 28 U.S.C. § 2254, as amended by the AEDPA, which provides, in relevant part:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id*.

The AEDPA establishes a deferential standard of review – "a federal *habeas* court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). While "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

C. Analysis of the Merits

As discussed below, even assuming

5

*arguendo* that the instant petition is not time barred, the petition must be denied on the merits.

### (1) Involuntary and Coercive Guilty Plea Claim

Petitioner argues that his guilty plea was coerced and involuntary because at the time of his guilty plea there was an unconstitutional sentencing structure in New York death penalty law. This claim, however, fails on the merits.

Under the New York death penalty legislation, a jury trial was required once a death notice was filed. However, a defendant could plead guilty if there was an agreement that the sentence would be life in prison or a term of years. This death penalty regime was held to run afoul of the Constitution in *United States v. Jackson*, 390 U.S. 570 (1968). In *Jackson*, the Supreme Court held that the death penalty appended to the then Federal Kidnaping Act violated the Fifth and Sixth Amendments because the statute encouraged defendants to plead guilty and forego the right to a jury trial in order to avoid the possibility that the jury would impose the death penalty. *Jackson*, 390 U.S. at 581-82. In *Hynes v. Tomei,* the Court of Appeals struck the defective statutory provisions in New York and held that a defendant could not plead guilty to first degree murder while notice to seek the death penalty was pending. 92 N.Y.2d 613, 630 (N.Y. 1998). In other words, if a death notice was filed and the parties reached a plea agreement, the death notice had to be withdrawn before the plea agreement could be effectuated. Moreover, in *Francois v. Dolan,* because of a concern about a race to the courthouse, the Court of Appeals held that a defendant had no right to plead guilty to any portion of a first degree murder indictment until the statutory 120-day period to file a death notice had elapsed. 95 N.Y.2d 33, 37 (N.Y. 2000).

As a threshold matter, the *Hynes* decision had no application to the circumstances in the instant case. Specifically, as noted above, at the time of petitioner's guilty plea, a District Attorney in New York was provided with one-hundred and twenty (120) days after arraignment to decide whether or not to seek the death penalty in a First Degree Murder case. (N.Y.C.P.L. § 250.40(1)). Here, a death notice was not filed by the District Attorney. Thus, petitioner never had "the death penalty hang[ing] over" him and influencing his decision to enter a plea of guilty. *Hynes*, 92 N.Y.2d at 626. In other words, because the Court of Appeals in *Hynes* struck only those provisions of the death penalty legislation that permitted a guilty plea when a death notice was pending, that case is inapposite here where no notice was filed.

Additionally, petitioner's plea was not rendered involuntary because it took place within the one-hundred and twenty (120) day window in which the District Attorney had to file a death notice. Indeed, the plea agreement was the equivalent of a decision not to seek the death penalty. *People v. Hall*, 738 N.Y.S.2d 782, 782 (App. Div. 2002). In fact, Batts pleaded guilty on the 118th day after his arraignment.

Finally, even if a death notice had been filed and petitioner had pled guilty while it was pending, petitioner's guilty plea would not be invalid under *Jackson*. In *Brady v. United States*, the Supreme Court held that a guilty plea accepted on a Federal Kidnaping Act charge, which was subsequently called into question by *Jackson*, was still knowingly and voluntarily made, and therefore, would

not be vacated. 397 U.S. 742, 757-58 (1970); *see also People v. Edwards,* 96 N.Y.2d 445, 460 (N.Y. 2001) (applying *Brady* and finding that defendant's plea was still knowing and voluntary where, prior to the *Hynes* decision, defendant pleaded guilty to first degree murder while notice of intent to seek death penalty was pending). Therefore, in the instant case, the state court's decision regarding the validity of petitioner's plea is completely consistent with the Supreme Court's decision in *Brady.*

In sum, the state court's decision that petitioner's plea was voluntary was not contrary to, nor an unreasonable application of, clearly established federal law.

(2) Defective Indictment Claim

Petitioner also claims the grand jury proceeding resulting in the issuance of his indictment was defective and focuses specifically on his request to testify in the grand jury. Respondent notes that, on February 20, 1996, the Supreme Court, Suffolk County, held that petitioner had received notice of his right to testify before the grand jury and, through counsel, had waived that right. As set forth below, even assuming *arguendo* that there was a factual basis for this claim, that claim fails on the merits because the purported grand jury defect does not provide a basis for *habeas* relief.

As a threshold matter, alleged defects in a state grand jury proceeding cannot provide grounds for *habeas* relief. *See, e.g., Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (finding that claims brought in a state grand jury proceeding are not cognizable in a collateral attack brought in federal court); *Dwyer v. Duval*, 23 F.3d 394, 394 (1st Cir. 1994) (rejecting *habeas* claim based on invalidity of a conviction due to lack of seal on indictment); *Norwood v. Hanslmaier*, No. 93 Civ. 3748 (NG), 1997 WL 67669, at *2 (E.D.N.Y. Feb. 11, 1997) (finding that denial of defendant's right to testify in the grand jury and lack of foreperson's signature on indictment did not raise federal constitutional claims).

Moreover, given petitioner's subsequent guilty plea on the murder charge (which he has failed to demonstrate was not knowingly and voluntarily entered), any alleged defects in the grand jury process cannot serve as grounds for *habeas* relief. *See, e.g., Whitehurst v. Senkowski*, 485 F. Supp. 2d 105, 117 (N.D.N.Y. 2007) (holding that if a guilty plea is valid, petitioner is precluded "from now challenging the legality of events that occurred prior to the entry of that plea. . . including his *habeas* claims that the prosecution improperly used statements he made to law enforcement agents to secure the Indictment, or which otherwise argue that the evidence presented to the grand jury to obtain that accusatory instrument was illegally tainted") (citation and quotation marks omitted); *Crispino v. Allard*, 378 F. Supp. 2d 393, 414 (S.D.N.Y. 2005) ("[I]f [petitioner] entered a voluntary, knowing, and intelligent guilty plea, any and all non-jurisdictional defects raised in the indictment are waived.").

Accordingly, the alleged defects in the grand jury process do not provide grounds for *habeas* relief in this case.

(3) Ineffective Assistance of Counsel Claim

Petitioner further contends that he received ineffective assistance of counsel because counsel abandoned an alternative defense of extreme emotional disturbance. For reasons set below, the Court finds that there is no basis to conclude that the state

7

court's decision that petitioner's counsel was constitutionally deffective was contrary to, or an unreasonable application of, clearly established federal law.

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Greiner*, 417 F.3d at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 389 (2005)).

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that it "undermines confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, in order to satisfy the "prejudice" prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). Moreover, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.*

This Court proceeds to examine each prong in turn, keeping in mind that a *habeas* petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). As set forth below, petitioner's claim fails to satisfy either element.

a. Deficient Performance Inquiry

Petitioner argues that his counsel was deficient because counsel abandoned an alternative defense of extreme emotional disturbance. In particular, petitioner claims that "[t]he three attorneys from the Capital Defender's Office, who represented Petitioner at arraignment, plea and sentence, rendered ineffective assistance to Petitioner by failing to consult with Petitioner, allow Petitioner to appear before the Grand Jury or raise the defense of "Extreme Emotional Disturbance," which would have reduced Petitioner's liability from Murder in the First degree to that of Manslaughter in the First degree." (*Habeas* Petition, at 14.)

The record before the Court establishes that petitioner was represented by a team of competent and diligent attorneys. The record reflects that they were knowledgeable about the applicable law and were intimately familiar with the facts and circumstances of petitioner's case. Moreover, nothing in the record suggests that his counsel failed to consult with him or to adequately consider this potential defense in advising him regarding his guilty plea. In other words, there is nothing in the record to support the position that defense counsel erred when they considered the relative chance of success of an extreme emotional disturbance defense, and the possibility that the death penalty could be sought, against a plea with a sentence of lifetime incarceration.[2]

In short, there is no evidence that the defense team's actions did not "f[a]ll below the objective standard of reasonableness" measured under "prevailing professional norms."[3] *Strickland*, 466 U.S. at 668, 694, 699.

### b. Prejudice Inquiry

The Court also finds that petitioner has failed to show a sufficient likelihood that the affirmative defense of extreme emotional disturbance would have been successful at trial. As an affirmative defense to intentional First Degree Murder, New York law requires the defendant to prove that he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. *See* N.Y. Penal Law §125.25(1)(a). Petitioner has offered no evidence that, if he had been properly advised regarding the potential defense, he would not have pleaded guilty. Moreover, there is also absolutely no basis to believe that such a defense would have prevailed at trial, especially given, among other things, the evidence referenced in the record which the prosecution intended to offer at trial regarding petitioner's actions immediately after he committed the murder during a robbery, including removing the victim's body from the crime scene, placing it in an abandoned home, cleaning up the crime scene, and later feigning discovery of the victim's body. *See People v. Roche*, 98

---

[2] In an affidavit submitted to the Supreme Court, Suffolk County, in opposition to petitioner's motion to vacate, the Assistant District Attorney noted: "From arraignment until defendant pleaded guilty there were extensive communications and negotiations between the prosecutor and defense counsels. Defense counsels, in order to prevent a potential death sentence, provided the District Attorney's Office with material and information regarding defendant's mental ability and psychiatric history. Based on the information provided by defense counsels, the negotiations between the parties resulted in the agreement that defendant would plead guilty to first degree murder in exchange for a sentence of life in prison without parole. Since the outcome of the case was negotiated – largely based on the information provided by defense counsels – no death notice (CPL § 250.40) was filed in this case." (Affidavit of Michael J. Miller, sworn to on Dec. 7, 2005, at ¶¶ 10-11.)

[3] Moreover, to the extent that petitioner again raises the issue of not being allowed the right to testify before the grand jury as part of his ineffective assistance of counsel claim, that argument also fails because, among other things, there is no factual basis to support it and, in any event, would not provide a basis for *habeas* relief because of the lack of prejudice under the circumstances of this case.

9

N.Y.2d 70, 77 (N.Y. 2002) (holding that a defendant who stabbed his common law wife was not entitled to a jury charge on the defense of extreme emotional disturbance, citing, among other reasons, defendant's behavior, including providing a false explanation to the neighbors for his wife's death and removing items from the apartment to prevent the police from discovering them). Thus, there is no basis to conclude that the "prejudice" prong could be satisfied in this case.

Accordingly, the state court's denial of petitioner's ineffective assistance of counsel claim was not contrary to, nor an unreasonable application of, clearly established federal law and this claim does not warrant *habeas* relief.

### III. CONCLUSION

For the foregoing reasons, the petition for a writ of *habeas corpus* is dismissed as time-barred and also denied on the merits. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 22, 2008
Central Islip, New York

\* \* \*

Petitioner appears *pro se*. Attorney for Respondent is Thomas J. Spota, District Attorney of Suffolk County, by Michael J. Miller, Assistant District Attorney, Criminal Courts Building, 200 Center Drive, Riverhead, New York 11901.